**EXHIBIT A**

Plan of Reorganization

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x
:
*In re* : Chapter 11
:
**INTERNATIONAL ALUMINUM** : Case No. 10-_____ (___)
**CORPORATION,** *et al.*, :
: (Jointly Administered)
Debtors. :
-------------------------------------------------------------x

### DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF IAC HOLDING CO., INTERNATIONAL ALUMINUM CORPORATION, UNITED STATES ALUMINUM CORPORATION, UNITED STATES ALUMINUM CORPORATION-CAROLINA, UNITED STATES ALUMINUM CORPORATION-ILLINOIS, UNITED STATES ALUMINUM CORPORATION-TEXAS, RACO INTERIOR PRODUCTS, INC., GENERAL WINDOW CORPORATION, INTERNATIONAL EXTRUSION CORPORATION-TEXAS, INTERNATIONAL EXTRUSION CORPORATION, INTERNATIONAL WINDOW-ARIZONA, INC., AND INTERNATIONAL WINDOW CORPORATION

WEIL, GOTSHAL & MANGES LLP
Attorneys for Debtors and
Debtors in Possession
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

- and -

RICHARDS, LAYTON & FINGER, P.A.
Attorneys for Debtors and
Debtors in Possession
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

IAC Holding Co., International Aluminum Corporation, United States Aluminum Corporation, United States Aluminum Corporation-Carolina, United States Aluminum Corporation-Illinois, United States Aluminum Corporation-Texas, RACO Interior Products, Inc., General Window Corporation, International Extrusion Corporation-Texas, International Extrusion Corporation, International Window-Arizona, Inc. and International Window Corporation (collectively, the "***Debtors***") propose the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of title 11 of the United States Code (the "***Bankruptcy Code***"):

## SECTION 1.  DEFINITIONS AND INTERPRETATION

### A.  Definitions.

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

1.1.  ***Administrative Agent*** means Canadian Imperial Bank of Commerce, New York Agency, as administrative and collateral agent under the Credit Agreement.

1.2.  ***Administrative Agent's Professionals*** means Latham & Watkins, LLP, Duane Morris LLP, and Richter Consulting, Inc.

1.3.  ***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of any of the Reorganization Cases Allowed under and in accordance with, as applicable, sections 330, 364(c)(1), 365, 503(b), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' estates or operating the Debtors' businesses, (b) any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Reorganization Cases, (c) any compensation for professional services rendered and reimbursement of expenses incurred by a professional retained by order of the Bankruptcy Court or otherwise allowed pursuant to section 503(b) of the Bankruptcy Code, and (d) all reasonable fees and expenses incurred by the Administrative Agent's Professionals, pursuant to their respective prepetition engagement letters.

1.4.  ***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

1.5.  ***Allowed*** means, with reference to any Claim or Equity Interest, (a) any Claim or Equity Interest arising on or before the Effective Date (i) as to which no objection to allowance has been interposed in accordance with Section 7.2 hereof or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Equity Interest as to which the liability of the Debtors and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court or (c) any Claim or Equity Interest expressly Allowed hereunder.

1.6.  ***Bankruptcy Code*** has the meaning ascribed to such term in the introduction.

1.7.  ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Reorganization Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Reorganization Cases under section 151 of title 28 of the United States Code.

1.8.  ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code,

as amended from time to time, applicable to the Reorganization Cases, and any local rules of the Bankruptcy Court.

1.9.    **Business Day** means any day other than a Saturday, a Sunday or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.10.    **Cash** means legal tender of the United States of America.

1.11.    **Claim** has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.12.    **Class** means any group of substantially similar Claims or Equity Interests classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.13.    **Collateral** means any property or interest in property of the estate of any Debtor subject to a lien, charge or other encumbrance to secure the payment or performance of a Claim, which lien, charge or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.14.    **Commencement Date** means the date on which each of the respective Debtors commenced its Reorganization Case.

1.15.    **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.16.    **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.17.    **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.18.    **Credit Agreement** means that certain Credit Agreement, dated as of March 30, 2007, as amended through the date hereof, by and among IAC, the lenders party thereto and the Administrative Agent (as further amended or otherwise modified from time to time).

1.19.    **Credit Agreement Claims** means the Senior Lender Credit Agreement Revolver Claims and the Senior Lender Credit Agreement Term Claims.

1.20.    **Debtors** has the meaning ascribed to such term in the introduction.

1.21.    **Disbursement Agent** means any entity (including any applicable Debtor if it acts in such capacity) in its capacity as a Disbursement Agent under Sections 6.6, 6.7, and 6.9 hereof.

1.22.    **Disclosure Statement** means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time pursuant to the terms of the Restructuring Support Agreement, as approved by the Bankruptcy Court pursuant to sections 1125 and 1126 of the Bankruptcy Code.

1.23.    **Disputed Claim** means any Claim or Equity Interest (a) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503 or

1111 of the Bankruptcy Code, or (b) for which a proof of claim or interest for payment has been timely filed with the Bankruptcy Court or a written request for payment has been made.

1.24. **Distribution Record Date** means, except with respect to any publicly traded securities, the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be five (5) Business Days after the Confirmation Date.

1.25. **Effective Date** means the Business Day on or after the Confirmation Date specified by the Debtors on which (a) no stay of the Confirmation Order is in effect and (b) the conditions to the effectiveness of the Plan specified in Section 9 hereof have been satisfied or waived; *provided, however*, that such Business Day shall be no later than 90 days after entry of the Confirmation Order.

1.26. **Equity Interest** means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in any of the Debtors, whether or not transferable, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

1.27. **Excess Cash** means the Debtors' Cash on hand in excess of $20 million on a pro forma basis net of actual and estimated Administrative Expense Claims as of the Effective Date.

1.28. **Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a stay, new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a stay, new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of *certiorari*, stay, new trial, reargument or rehearing thereof has been sought, (i) such order or judgment shall have been affirmed by the highest court to which such order was appealed, *certiorari* shall have been denied, or a stay, new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and (ii) the time to take any further appeal, petition for *certiorari* or move for a stay, new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a "Final Order."

1.29. **General Unsecured Claim** means any Claim against any of the Debtors that (a) is not an Administrative Expense Claim, Priority Tax Claim, Priority Non-Tax Claim, Credit Agreement Claim, Other Secured Claim, Notes Claim, Intercompany Claim, or (b) is otherwise determined by the Bankruptcy Court to be a General Unsecured Claim.

1.30. **Group Tax Returns** has the meaning ascribed to such term in Section 12.6(a).

1.31. **Holdings** means IAC Holding Co.

1.32. **IAC** means International Aluminum Corporation.

1.33. **IAC Group** means (i) the affiliated group of corporations, within the meaning of Section 1504 of the Tax Code, of which Holdings is the common parent, and (ii) any other group of corporations filing consolidated, combined or unitary tax returns for state and local tax purposes that includes Holdings, of which IAC or any subsidiary of IAC is also a member (other than any such group of which IAC or any subsidiary of IAC is the parent).

1.34. **_IAC Subsidiary Debtors_** means United States Aluminum Corporation, United States Aluminum Corporation – Carolina, United States Aluminum Corporation – Illinois, United States Aluminum Corporation – Texas, RACO Interior Products, Inc., General Window Corporation, International Extrusion Corporation-Texas, International Extrusion Corporation, International Window–Arizona, Inc., and International Window Corporation.

1.35. **_Intercompany Claim_** means any claim held by (i) a Debtor against another Debtor or (ii) a non-Debtor subsidiary against a Debtor.

1.36. **_Management Incentive Plan_** means the management incentive plan, which shall be substantially in the form set forth in Exhibit "C" attached hereto.

1.37. **_New Board_** means each board of directors appointed pursuant to Section 5.2(c) of the Plan.

1.38. **_Newco_** means Reorganized IAC or a legal entity organized pursuant to the laws of Delaware that will acquire the assets of IAC and assume the reinstated liabilities and other obligations of IAC hereunder in accordance with terms hereof on the Effective Date, as more fully described in the Plan Supplement.

1.39. **_New Credit Agreement_** means the Credit Agreement, to be dated as of the Effective Date, by and among Reorganized Holdings and the other Reorganized Debtors, and the holders of Credit Agreement Claims, and the Administrative Agent (as amended or otherwise modified from time to time in accordance with the terms thereof), which will be filed as part of the Plan Supplement and consistent with the terms set forth in the Plan Term Sheet.

1.40. **_New Equity_** means the equity interests of Reorganized Holdings that will be issued on the Effective Date in accordance with the terms hereof.

1.41. **_New Security Agreement_** means that certain Security Agreement to be dated as of the Effective Date, and which will be filed as part of the Plan Supplement and consistent with the terms set forth in the Plan Term Sheet.

1.42. **_New Term Notes_** means those certain amended and restated term notes in the aggregate principal amount of $38,000,000 that will be issued pursuant to the New Credit Agreement.

1.43. **_Notes Claim_** means any Claim against any Debtor under or in connection with the Senior Subordinated Notes or the Senior Subordinated Loan Agreement.

1.44. **_Other Secured Claim_** means a Secured Claim, other than a Credit Agreement Claim.

1.45. **_Person_** means an individual, partnership, corporation, limited liability company, cooperative, trust, unincorporated organization, association, joint venture, government or agency or political subdivision thereof or any other form of legal entity.

1.46. **_Plan_** means this joint plan of reorganization, including the exhibits and schedules hereto and contained in the Plan Supplement, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms of the Restructuring Support Agreement.

1.47.   **Plan Documents** means the documents to be executed, delivered, assumed and/or performed in conjunction with the consummation of the Plan on the Effective Date which may include, but are not limited to, the Restated Bylaws, the Restated Certificate of Incorporation, the New Credit Agreement, the Registration Rights Agreement, and the Shareholders Agreement. Except as otherwise provided herein, the Plan Documents must be reasonably acceptable to the Consenting Holders (as defined in the Restructuring Support Agreement). Each of the Plan Documents to be entered into as of the Effective Date will be filed in draft form in the Plan Supplement.

1.48.   **Plan Supplement** means a supplemental appendix to the Plan, to be filed with the Bankruptcy Court prior to the Confirmation Hearing, that will contain the draft forms of the Plan Documents to be entered into as of the Effective Date.

1.49.   **Plan Term Sheet** means the IAC Preliminary Restructuring Proposal Term Sheet annexed hereto as Exhibit "A" (and as may be as amended or otherwise modified from time to time in accordance with the terms of the Restructuring Support Agreement).

1.50.   **Priority Non-Tax Claim** means any Claim against any of the Debtors, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

1.51.   **Priority Tax Claim** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.52.   **Registration Rights Agreement** means the agreement between Reorganized IAC and any holder of 10% or more of the issued and outstanding shares of the New Equity, which shall be filed as part of the Plan Supplement and entered into on the Effective Date and shall provide for each such holder of New Equity to have two separate demand rights to require Reorganized IAC to register its New Equity and for piggyback registration rights for the other initial holders of the New Equity.

1.53.   **Released Parties** means (a) each present and former director, officer, employee, manager, partner, and member of (i) the Debtors, (ii) the holders of the Credit Agreement Claims who held such claims at any time prior to the Effective Date, (iii) the holders of Equity Interests in Holdings, (iv) the Administrative Agent and its Affiliates, (v) Genstar Capital, LLC, in its capacity as an advisor under that certain Advisory Services Agreement by and between Genstar Capital, LLC and Holdings dated as of March 30, 2007, (b) each holder of a Credit Agreement Claim, (c) each holder of an Equity Interest in Holdings, IAC or any of the IAC Subsidiary Debtors, (d) the Administrative Agent and its Affiliates, and (e) each Advisor of the Debtors, the holders of Credit Agreement Claims, the holders of Equity Interests in Holdings, and the Administrative Agent. For purposes of this definition, "**Advisors**" means each financial advisor, investment banker, professional, accountant and attorney, and each of their respective employees, parent corporations, subsidiaries, affiliates and partners.

1.54.   **Reorganization Cases** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors.

1.55.   **Reorganized Debtors** means Reorganized Holdings, Newco, and all of the Debtors (including any successor corporation or entity by merger), as reorganized as of the Effective Date in accordance with the Plan.

1.56.   **Reorganized Holdings** means either Newco or any ultimate top tier holding company that directly or indirectly owns the assets of IAC, as will be set forth in more detail, along with the terms and steps of the corporate structuring of the Reorganized Debtors, in the Plan Supplement.

1.57.   **Reorganized IAC** means IAC on and after the Effective Date.

1.58.   **Required Supporting Holders** means the Senior Lenders party to the Restructuring Support Agreement.

1.59.   **Restated Bylaws** means the bylaws or amended and restated bylaws to be adopted by Reorganized Holdings on the Effective Date, which shall be substantially in the form to be included in the Plan Supplement.

1.60.   **Restated Certificate of Incorporation** means the certificate of incorporation or the amended and restated certificate of incorporation to be adopted by Reorganized Holdings and filed with the Secretary of State of the State of Delaware prior to or on the Effective Date, which shall be substantially in the form to be filed as part of Plan Supplement.

1.61.   **Restructuring Support Agreement** means that certain Restructuring Support Agreement, dated as of December 31, 2009, and annexed hereto as Exhibit "B."

1.62.   **Revolving Loan** means that certain revolving credit loan memorialized through the revolving notes issued under the Credit Agreement.

1.63.   **Secured Claim** means a Claim to the extent (a) secured by a lien on Collateral, to the extent of the value of such Collateral (i) as set forth in the Plan, or (ii) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (b) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.64.   **Securities Act** means the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

1.65.   **Senior Lenders** means the lenders party to the Credit Agreement.

1.66.   **Senior Lender Credit Agreement Revolver Claim** means any Claim arising out of the Revolving Loan governed by the Credit Agreement.

1.67.   **Senior Lender Credit Agreement Term Claim** means any Claim arising out of the Term Loan governed by the Credit Agreement.

1.68.   **Senior Subordinated Administrative Agent** means Carlyle Mezzanine Partners, L.P., as agent under the Senior Subordinated Loan Agreement.

1.69.   **Senior Subordinated Loan Agreement** means that certain Senior Subordinated Loan Agreement dated as of March 30, 2007, as amended through the date hereof, by and among IAC, Holdings, certain subsidiaries of IAC parties thereto from time to time and Carlyle Mezzanine Partners, L.P., as agent and a subordinated lender, Carlyle Capital Corporation Limited, as a subordinated lender and the other subordinated lenders parties from time to time thereto.

1.70.   **Senior Subordinated Notes** means those certain 12.75% Senior Subordinated Notes due 2014, issued by IAC pursuant to the Senior Subordinated Loan Agreement.

1.71.   **Shareholders Agreement** means that certain agreement of the shareholders of Reorganized IAC, which may be entered into on the Effective Date.

1.72. **_Tax Code_** means the Internal Revenue Code of 1986, as amended from time to time, and the Treasury regulations promulgated thereunder.

1.73. **_Term Loan_** means that certain term loan memorialized through term notes issued under the Credit Agreement.

## B. Interpretation, Application of Definitions and Rules of Construction.

For purposes of the Plan: (1) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (2) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, whether or not filed with the Bankruptcy Court, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (3) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns; (4) unless otherwise specified, all references in the Plan to sections are references to sections of the Plan; (5) unless otherwise specified, all references in the Plan to exhibits are references to exhibits in the Plan Supplement; (6) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (8) captions and headings to sections of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise set forth in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (11) all references to docket numbers of documents filed in the Reorganization Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, as applicable to the Reorganization Cases, unless otherwise stated; and (13) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors after the Effective Date in such a manner that is consistent with the overall purpose and intent of the Plan all without further Bankruptcy Court order.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## SECTION 2. ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

### 2.1 *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, or a different treatment is provided for by order of the Bankruptcy Court (including, without limitation, any order governing the use of cash collateral) each holder of an Allowed Administrative Expense Claim shall receive payment in full in Cash of the unpaid portion of such Allowed Administrative Expense Claim (a) in the case of professionals retained by the Debtors in the ordinary course of their business, if any, on such terms as are customary between the Debtors and such professionals, or (b) with respect to all other holders of Allowed Administrative Expense Claims, on the latest of (i) the Effective Date, (ii) the date on which such payment would be made in the ordinary course of the Debtors' business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements or regulations governing, instruments evidencing or other documents

relating to such transactions, and (iii) the date on which such Administrative Expense Claim becomes Allowed.

## 2.2 *Professional Compensation and Reimbursement Claims.*

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (b) be paid in full from the Debtors' or Reorganized Debtors' Cash on hand in such amounts as are allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the date upon which the order relating to any such Allowed Claim is entered, or (ii) upon such other terms as may be mutually agreed upon between the holder of such Allowed Claim and the Debtors or, on and after the Effective Date, the Reorganized Debtors. The Reorganized Debtors are authorized to pay compensation for services rendered and reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

## 2.3 *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall, in full satisfaction, release, and discharge of such Allowed Priority Tax Claim, (a) to the extent such Claim is due and owing on the Effective Date, be paid in full, in Cash, on the Effective Date, or (b) to the extent such Claim is not due and owing on the Effective Date, be paid in full, in Cash, in accordance with the terms of any agreement between the Debtors and such holder, or as may be due and owing under applicable non-bankruptcy law, or in the ordinary course of business.

## SECTION 3.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

As set forth more fully below, the Plan is premised upon the substantive consolidation of the Debtors for purposes of the Plan only. Accordingly, for purposes of the Plan, the assets and liabilities of the Debtors are deemed the assets and liabilities of a single, consolidated entity.

The following table designates the Classes of Claims against, and Equity Interests in, the Debtors, and specifies which of those Classes and Equity Interests are (a) impaired or unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) deemed to accept or reject the Plan.

| *Class* | *Designation* | *Impairment* | *Entitled to Vote* |
|---------|---------------|--------------|--------------------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| 2 | Credit Agreement Claims | Impaired | Yes |
| 3 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| 4 | Notes Claims | Impaired | No (deemed to reject) |
| 5 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| 6 | Intercompany Claims | Unimpaired | No (deemed to accept) |
| 7 | Equity Interests in IAC and IAC Subsidiary Debtors | Unimpaired | No (deemed to accept) |
| 8 | Equity Interests in Holdings | Impaired | No (deemed to reject) |

## SECTION 4.  TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1     *Priority Non-Tax Claims (Class 1)*.

(a)     <u>Impairment and Voting</u>. Class 1 is unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

(b)     <u>Distributions</u>. Except to the extent that a holder of an Allowed Priority Non-Tax Claim against any of the Debtors agrees to a different treatment, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the applicable Debtor and the holder of such Claim.

### 4.2     *Credit Agreement Claims (Class 2)*.

(a)     <u>Impairment and Voting</u>. Class 2 is impaired by the Plan. The Credit Agreement Claims shall be Allowed in full and, for the avoidance of doubt, shall not be subject to avoidance, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense, disallowance, impairment, objection or any challenges under any applicable law or regulation by any Person, in the aggregate amount of (i) $118,800,000, <u>plus</u> (ii) all accrued and unpaid interest thereon at the non-default contract rate under the Credit Agreement as of the Commencement Date, except to the extent such interest is otherwise provided herein to be paid or satisfied, <u>plus</u> (iii) all other Obligations (as defined in the Credit Agreement), except to the extent that the claims of the Administrative Agent under the Credit Agreement are otherwise provided to be paid or satisfied. Each holder of an Allowed Credit Agreement Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>. On the Effective Date or as soon thereafter as is reasonably practicable, each holder of an Allowed Credit Agreement Claim shall receive (i) its *pro rata* share of the Excess Cash, (ii) its *pro rata* share of the New Term Notes and (iii) its *pro rata* share of 100% of the New Equity outstanding on the Effective Date, less any of the New Equity distributed on the Effective Date pursuant to the Management Incentive Plan.

### 4.3     *Other Secured Claims (Class 3)*.

(a)     <u>Impairment and Voting</u>. Class 3 is unimpaired by the Plan. Each holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

(b)     <u>Distributions</u>. On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, each Allowed Other Secured Claim shall be reinstated or rendered unimpaired in accordance with section 1124 of the Bankruptcy Code, notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Claim prior to its stated maturity from and after the occurrence of an event of default. All Allowed Other Secured Claims that are not due and payable on or before the Effective Date shall, at the Debtors' option, be paid (i) in the ordinary course of business in accordance with the course of practice

between the Debtors and such holder with respect to such Claim or (ii) by transfer of the Collateral to the holder of such Claim.

### 4.4 *Notes Claims (Class 4)*.

(a) <u>Impairment and Voting</u>. Class 4 is impaired by the Plan. Each holder of an Allowed Senior Subordinated Notes Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have rejected the Plan.

(b) <u>Distributions</u>. On the Effective Date, the Senior Subordinated Loan Agreement and each of the Senior Subordinated Notes shall be canceled and terminated and the Notes Claims shall be extinguished with no distribution.

### 4.5 *General Unsecured Claims (Class 5)*.

(a) <u>Impairment and Voting</u>. Class 5 is unimpaired by the Plan. Each holder of an Allowed General Unsecured Claim is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed General Unsecured Claim shall receive payment in full in Cash of the unpaid portion of such Allowed General Unsecured Claim on the latest of (i) the Effective Date (or as soon thereafter as is reasonably practicable), (ii) the date on which such Claim would be paid in the ordinary course of the Debtors' business, (iii) as otherwise agreed by the Debtors and the holder of such Claim, and (iv) the date on which such General Unsecured Claim becomes Allowed; *provided, however*, that the Debtors may seek authority from the Bankruptcy Court to pay certain General Unsecured Claims in advance of the Effective Date in the ordinary course of business. The Debtors reserve their rights, however, to dispute the validity of any General Unsecured Claim, whether or not objected to prior to the Effective Date.

### 4.6 *Intercompany Claims (Class 6)*.

(a) <u>Impairment and Voting</u>. Class 6 is unimpaired by the Plan. Each holder of an Allowed Equity Interest in IAC or any IAC Subsidiary Debtor is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

(b) <u>Distributions</u>. On or as soon as practicable after the Effective Date, all Intercompany Claims will either be reinstated to the extent determined to be appropriate by the Debtors or adjusted, waived, continued or capitalized, either directly or indirectly, in whole or in part. Any such transaction may be effected on or subsequent to the Effective Date without any further action by equityholders of Reorganized Holdings.

### 4.7 *Equity Interests in IAC and IAC Subsidiary Debtors (Class 7)*.

(a) <u>Impairment and Voting</u>. Class 7 is unimpaired by the Plan. Each holder of an Allowed Equity Interest in IAC or any IAC Subsidiary Debtor is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have accepted the Plan.

(b) <u>Distributions</u>. On the Effective Date and subject to Sections 5.2 and 5.5 of the Plan, all of the Equity Interests of the IAC Subsidiary Debtors shall be owned by Newco and all existing Equity Interests of IAC shall be cancelled.

**4.8**    *Equity Interests in Holdings (Class 8).*

(a)    Impairment and Voting. Class 8 is impaired by the Plan. Each holder of an Allowed Equity Interest in Holdings is not entitled to vote to accept or reject the Plan and shall be conclusively deemed to have rejected the Plan.

(b)    Distributions. On the Effective Date, or as soon thereafter as is reasonably practicable, all existing Equity Interests in Holdings shall be cancelled, and the Equity Interests of each holder of an Allowed Equity Interest in Holdings shall be extinguished with no distribution.

## SECTION 5.    MEANS FOR IMPLEMENTATION

**5.1**    *Substantive Consolidation of Debtors for Plan Purposes Only.*

The Plan is premised upon the substantive consolidation of the Debtors for purposes of the Plan only. The Debtors propose procedural substantive consolidation to avoid the inefficiency of proposing, voting on, and making distributions in respect of entity-specific claims. Accordingly, on the Effective Date, all of the Debtors and their estates shall, for purposes of the Plan only, be deemed merged and (a) all assets and liabilities of the Debtors shall be treated for purposes of the Plan only as though they were merged, (b) all guarantees of Holdings, IAC and the IAC Subsidiary Debtors of payment, performance, or collection of obligations of any other Debtor shall be eliminated and cancelled, (c) all joint obligations of two (2) or more Debtors, and all multiple Claims against such entities on account of such joint obligations, shall be considered a single claim against the Debtors, and (d) any Claim filed in the Reorganization Cases shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date. Unless otherwise set forth herein, such substantive consolidation shall not (other than for voting, treatment, and distribution purposes under the Plan) affect (i) the legal and corporate structures of the Debtors (including the corporate ownership of the IAC Subsidiary Debtors), (ii) any Intercompany Claims, or (iii) the substantive rights of any creditor. If any party in interest challenges the proposed limited substantive consolidation, the Debtors reserve the right to establish at the Confirmation Hearing the ability to confirm the Plan on an entity-by-entity basis.

**5.2**    *Corporate Action.*

(a)    General. Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) selection of the directors and officers for the Reorganized Debtors, (ii) transfer of the assets of IAC, or any other Reorganized Debtor to Reorganized Holdings, as more fully described in the Plan Supplement, (iii) Reorganized Holdings' distribution of the New Equity, as more fully described in the Plan Supplement, to satisfy Credit Agreement Claims in accordance with Section 4.2(b) of the Plan, (iv) distribution of the New Term Notes, (v) adoption of the Management Incentive Plan, (vi) gifting to holders of Allowed General Unsecured Claims in the form of Cash distributions to satisfy Allowed General Unsecured Claims in accordance with Section 4.5 of the Plan, (vii) dissolution of Holdings and IAC on or as of the Effective Date or as soon as practicable thereafter, and (viii) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall occur in accordance with the Plan and any governing agreements or transfer documents and shall be in effect, without any requirement of further action by the security holders, directors or officers of the Debtors or the Reorganized Debtors ; provided, however, that the Required Supporting Holders must unanimously consent to any corporate structure of the Reorganized Debtors to be implemented hereunder, including, to the transfer of IAC's assets to Newco; provided further that the Debtors may elect, with the unanimous consent of the Required Supporting Holders, to

utilize an alternative corporate structure to distribute the New Equity to holders of Credit Agreement Claims in accordance with Section 4.2 of the Plan and pursuant to the Management Incentive Plan. Any such alternative structure will be described in the Plan Supplement and shall comply with Section 12.7 of the Plan. As a result, holders of Credit Agreement Claims that have accepted the Plan shall be deemed to have accepted the Plan with the alternative corporate structure and any holders of Claims who were deemed to accept the Plan because such Claims were unimpaired shall continue to be deemed to accept the Plan. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including, without limitation, (w) the Shareholders Agreement, (x) the Registration Rights Agreement, (y) the New Credit Agreement, and (z) any and all other agreements, documents, securities and instruments relating to the foregoing (including without limitation security documents). The authorizations and approvals contemplated by this Section 5.2(a) shall be effective notwithstanding any requirements under non-bankruptcy law.

(b)     Restated Organizational Documents. On the Effective Date, Reorganized Holdings shall adopt the Restated Certificate of Incorporation and the Restated Bylaws and shall file the Restated Certificate of Incorporation with the Secretary of State of the State of Delaware. In addition, on or before the Effective Date, pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, the Restated Certificate of Incorporation, the certificates of incorporation of the Debtors that are corporations and the organization documents for the Debtors that are limited liability companies shall also be amended (and as to the corporate Debtors, filed with the Secretary of State of their respective states of incorporation) as necessary to satisfy the provisions of the Bankruptcy Code and shall include, among other things, (i) a provision prohibiting the issuance of non-voting equity securities and (ii) a provision setting forth an appropriate distribution of voting power among classes of equity securities possessing voting power, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends. On the Effective Date, the boards of directors of each corporate Reorganized Debtor shall be deemed to have adopted the restated bylaws for such Reorganized Debtor.

(c)     Boards of Directors. On the Effective Date, the operation of Reorganized Holdings shall become the general responsibility of its board of directors, subject to, and in accordance with, the Restated Certificate of Corporation and Restated Bylaws of Reorganized Holdings. On the Effective Date, the operation of each of the other Reorganized Debtors shall become the general responsibility of its respective board of directors or board of managers, as applicable, subject to and in accordance with its respective restated certificates of incorporation and restated bylaws or other organizational documents. The initial boards of directors of Reorganized Holdings and the other Reorganized Debtors shall be disclosed in the Plan Supplement. The initial board of directors of Reorganized Holdings shall consist of five (5) directors, one (1) of whom shall be Richard E. Almy, two (2) of whom shall be independent directors unaffiliated with either the Debtors or the holders of the Credit Agreement Claims, and two (2) members whom shall be selected by the holders of the Credit Agreement Claims. The initial board of directors of the other Reorganized Debtors shall, in each case, consist of three (3) directors, one (1) of whom shall be Richard E. Almy, one (1) of whom shall be the Chief Financial Officer of Reorganized Holdings, and one (1) of whom shall be the group head of the applicable Reorganized Debtor.

(d)     Officers. The initial officers of Reorganized Holdings and the other Reorganized Debtors shall be disclosed in the Plan Supplement. The selection of officers of Reorganized Holdings and the other Reorganized Debtors after the Effective Date shall be as provided in the respective restated

certificates of incorporation and restated bylaws or other organizational documents of Reorganized Holdings or the applicable Reorganized Debtor.

### 5.3 *Distribution of New Term Notes.*

On the Effective Date, the New Credit Agreement shall be executed and delivered, and Reorganized IAC, Reorganized Holdings and the other Reorganized Debtors and any of their affiliates are authorized, as applicable, to distribute the New Term Notes and to execute, deliver and enter into, *inter alia*, the New Credit Agreement and the New Security Agreement without the need for any further corporate action and without further action by the holders of Claims or Equity Interests. A copy of the New Credit Agreement and the New Security Agreement will be filed as part of the Plan Supplement.

The New Credit Agreement shall be given in renewal and rearrangement of and in substitution (but not in payment) for, and shall re-evidence the Credit Agreement Claims net of Excess Cash and the value of the New Equity received hereunder by holders of the Credit Agreement Claims. Such re-evidenced Credit Agreement Claims shall continue to be secured by first priority, perfected, valid and enforceable liens in the collateral pursuant to, and as set forth in the New Security Agreement.

### 5.4 *Issuance of New Equity.*

The issuance of New Equity hereunder and under the Management Incentive Plan is authorized without the need for any further corporate action.

### 5.5 *Merger/Dissolution/Consolidation.*

On or as of the Effective Date or as soon as practicable thereafter and without further need for any further action, the Reorganized Debtors may (including to, among other things, effectuate the restructuring transactions described in Section 1.56 hereof) (i) cause any or all of the Debtors to be merged into one or more of the Reorganized Debtors or any of their affiliates, dissolved or otherwise consolidated, (ii) cause the transfer of assets between or among the Reorganized Debtors or any of their affiliates, or (iii) engage in any other transaction in furtherance of the Plan consistent with the Plan Term Sheet.

### 5.6 *Cancellation of Existing Securities and Agreements.*

Except for purposes of evidencing a right to distributions under the Plan with respect to executory contracts or unexpired leases that have not been assumed by the Debtors or as otherwise provided hereunder, on the Effective Date, all of the agreements and other documents evidencing (a) the Claims or rights of any holder of a Claim against the Debtors, including all credit agreements, indentures and notes evidencing such Claims, (b) the Equity Interests in Holdings, and (c) any options or warrants to purchase Equity Interests of Holdings, IAC or any of the IAC Subsidiary Debtors, or obligating such Debtors to issue, transfer or sell Equity Interests or any other capital stock of such Debtors, shall be amended, restated, substituted for or cancelled, as the case may be.

### 5.7 *Surrender of Existing Securities.*

On the Effective Date, the Equity Interests in Holdings and IAC shall be deemed to have been surrendered to the Debtors by each holder thereof and such security shall be deemed cancelled.

**5.8    *New Agreements with Existing Management.***

On the Effective Date, Reorganized IAC shall enter into new employment agreements with certain of the Debtors' existing senior management as part of the Management Incentive Plan.

**5.9    *Cancellation of Liens.***

Except as otherwise provided in the Plan (including without limitation the continuation of the liens securing the Credit Agreement Claims), upon the occurrence of the Effective Date, any lien securing any Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of any Debtor (including any cash Collateral) held by such holder and to take such actions as may be requested by the Reorganized Debtors to evidence the release of such lien, including the execution, delivery and filing or recording of such releases.

**5.10    *Compromise of Controversies.***

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

**5.11    *Exemption from Securities Laws.***

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, any issuance under the Plan of the New Equity will be exempt from registration under the Securities Act and the Reorganized Debtors will not be subject to the reporting requirements of the Securities Exchange Act of 1934.

**5.12    *Exemption From Transfer Taxes.***

Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer from a Debtor to a Reorganized Debtor or any other Person pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Without limiting the foregoing, any issuance, transfer or exchange of a security or any making or delivery of an instrument of transfer pursuant to the Plan shall be exempt from the imposition and payment of any and all transfer taxes (including, without limitation, any and all stamp taxes or similar taxes and any interest, penalties and addition to the tax that may be required to be paid in connection with the consummation of the Plan and the Plan Documents) pursuant to sections 1146(a), 505(a), 106 and 1141 of the Bankruptcy Code.

## SECTION 6.    DISTRIBUTIONS

### 6.1    *Voting of Claims*

Each holder of an Allowed Claim in an impaired class of Claims that is entitled to vote on the Plan pursuant to Sections 3 and 4 of the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in such order as is entered by the Bankruptcy Court approving procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order of the Bankruptcy Court.

### 6.2    *Cramdown and No Unfair Discrimination*

In the event that any impaired Class of Claims or Equity Interests rejects the Plan or is deemed to have rejected the Plan, the Debtors reserve the right, without any delay in the occurrence of the Confirmation Hearing or Effective Date, to (a) request that the Bankruptcy Court confirm the Plan in accordance with 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, and/or (b) amend the Plan in accordance with Section 12.7 hereof.

### 6.3    *Distribution Record Date.*

Except with respect to any publicly traded securities, as of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims. The Debtors or the Reorganized Debtors, as applicable, shall have no obligation to recognize any transfer of the Claims occurring on or after the Distribution Record Date. The Debtors, the Reorganized Debtors or any party responsible for making distributions pursuant to this Section 6 shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 6.4    *Date of Distributions.*

Except as otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is reasonable practicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.5    *Sources of Cash for Distributions.*

All Cash required for the payments to be made hereunder shall be obtained from the Debtors' and the Reorganized Debtors' operations and Cash on hand.

### 6.6    *Disbursement Agent.*

Unless otherwise specified herein, all distributions under this Plan shall be made by Reorganized Holdings as Disbursement Agent or such other entity designated by Reorganized Holdings as a Disbursement Agent on the Effective Date. No Disbursement Agent hereunder, including, without limitation, the Administrative Agent, shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### 6.7 **Rights and Powers of Disbursement Agent.**

Each Disbursement Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Disbursement Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by such Disbursement Agent to be necessary and proper to implement the provisions hereof.

### 6.8 **Expenses of the Disbursement Agent.**

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by each Disbursement Agent acting in such capacity (including taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

### 6.9 **Delivery of Distributions.**

(a)     Last Known Address. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made to the address of such holder as set forth in the books and records of the Debtors, unless the applicable Reorganized Debtor has been notified by such holder in writing of a change of address, including the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on the Debtors' books and records. In the event that any distribution to any holder is returned as undeliverable, the Disbursement Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursement Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided, however,* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to the Reorganized Debtors, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary.

(b)     Distributions by Administrative Agent. The Administrative Agent shall be the Disbursement Agent for the Allowed Credit Agreement Claims. Distributions under the Plan to holders of such Allowed Credit Agreement Claims shall be made by the Reorganized Debtors to the Administrative Agent, which, in turn, shall make the distributions to the holders of such Allowed Claims. The Administrative Agent shall not be required to give any bond, surety or other security for the performance of its duties with respect to its administration of distributions. Upon delivery by the Reorganized Debtors of the distributions in conformity with Section 4.2(b) of the Plan to the Administrative Agent, the Reorganized Debtors shall be released of all liability with respect to the delivery of such distributions.

### 6.10 **Manner of Payment Under Plan.**

(a)     All distributions under the Plan shall be made by, or at the direction of, the Disbursement Agent on behalf of the applicable Debtor.

(b)     All distributions of New Equity made on account of the Management Incentive Plan shall be made by Reorganized IAC.

(c)     At the option of the applicable Disbursement Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 6.11    *No Fractional Shares of New Equity*.

No fractional shares of capital stock shall be issued or distributed under the Plan and no Cash shall be distributed in lieu of such fractional shares.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of capital stock that is not a whole number, the actual distribution of shares of capital stock shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized shares of capital stock to be distributed to holders of Allowed Claims shall be adjusted as necessary to account for the foregoing rounding.

### 6.12    *Setoffs and Recoupment*.

Except as set forth in Section 4.2(a) of the Plan, the Debtors and the Reorganized Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made) any claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors or the Reorganized Debtors may have against the holder of such Claim.

### 6.13    *Distributions After The Effective Date*.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but by which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 6.14    *Cash Distributions*.

No payment of Cash of less than $100 shall be made to any holder of an Allowed Claim unless a request therefor is made in writing to the appropriate Disbursement Agent.

### 6.15    *No Postpetition Interest on Claims*.

Unless otherwise specifically provided for in this Plan or the Confirmation Order, or as required by applicable bankruptcy law, postpetition interest shall not accrue on or after the Commencement Date on account of any Claim.

## SECTION 7.    PROCEDURES FOR DISPUTED CLAIMS

### 7.1    *Disputed Claims/Process*.

On and after the Effective Date, except as otherwise provided herein, all Claims will be paid in the ordinary course of business of the Reorganized Debtor.  If the Debtors dispute any Claim, such dispute shall be determined, resolved or adjudicated, as the case may be, in a manner as if the Reorganization Cases had not been commenced and shall survive the Effective Date as if the Reorganization Cases had not been commenced.  Notwithstanding section 502(a) of the Bankruptcy Code, and considering the unimpaired treatment of all holders of General Unsecured Claims under this

Plan, all proofs of claim filed in these Reorganization Cases shall be considered objected to and disputed without further action by the Debtors. Upon the Effective Date, all proofs of claim filed against the Debtors, regardless of the time of filing, and including claims filed after the Effective Date, shall be deemed withdrawn. The deemed withdrawal of all proofs of claim is without prejudice to any claimant's rights under this Section 7.1 of the Plan to assert their Claims in any forum as though the Debtors' cases had not been commenced.

### 7.2 *Objections to Claims.*

Except insofar as a Claim is Allowed under the Plan and notwithstanding Section 7.1 above, the Debtors or the Reorganized Debtors shall be entitled to object to Claims.

### 7.3 *Estimation of Claims.*

The Debtors and the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 7.4 *No Distributions Pending Allowance.*

Notwithstanding any other provision hereof, if any portion of an Administrative Expense Claim or a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim. To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed, and any property withheld pending the resolution of such Claim shall be reallocated *pro rata* to the holders of Allowed Claims in the same Class.

### 7.5 *Distributions after Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursement Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law.

### 7.6 *Preservation of Claims and Rights to Settle Claims.*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, in accordance with section

1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, causes of action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their estates may hold against any Person, without the approval of the Bankruptcy Court, subject to the terms of Section 7.2 hereof, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Reorganized Debtors or their successor(s) may pursue such retained claims, rights, causes of action, suits or proceedings, as appropriate, in accordance with the best interests of the Reorganized Debtors or their successor(s) who hold such rights.

### SECTION 8.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES

#### 8.1   *Assumption and Rejection of Contracts and Leases.*

Except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, as of the Effective Date, the Debtors shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (a) was previously assumed or rejected by the Debtors, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to reject filed by the Debtors on or before the Confirmation Date or (d) is set forth in a schedule, as an executory contract or unexpired lease to be rejected filed by the Debtors as part of the Plan Supplement. The Confirmation Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (a) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease and (b) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

#### 8.2   *Cure of Defaults.*

Any monetary amounts by which any executory contract and unexpired lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors upon assumption thereof or as soon as practicable thereafter. If there is a dispute regarding (a) the nature or amount of any cure, (b) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (c) any other matter pertaining to assumption, any cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

#### 8.3   *Rejection Claims.*

All Claims arising out of the rejection of executory contracts and unexpired leases must be served upon the Debtors and their counsel within thirty (30) days after the date of entry of an order of the Bankruptcy Court approving such rejection. Any Claims not filed within such time shall be forever barred from assertion against the Debtors, their estates, and their property.

#### 8.4 *Survival of the Debtors' Indemnification Obligations*.

Any obligations of the Debtors pursuant to their certificates of incorporation and bylaws or organizational documents, as applicable, or any other agreements entered into by any Debtor at any time prior to the Effective Date, to indemnify current and former directors, officers, agents, and/or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents, and/or employees, based upon any act or omission for or on behalf of the Debtors, irrespective of whether such indemnification is owed in connection with an event occurring before or after the Commencement Date, shall not be discharged or impaired by confirmation of the Plan. Such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors hereunder and shall continue as obligations of the Reorganized Debtors. Any Claim based on the Debtors' obligations herein shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

#### 8.5 *Survival of Other Employment Arrangements*.

Except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all collective bargaining agreements to which the Debtors are party and all employee compensation and benefit plans (other than the existing incentive plans to be replaced by the Management Incentive Plan) entered into before or after the Commencement Date and not since terminated shall be deemed to be, and shall be treated as if they were, executory contracts to be assumed pursuant to the Plan. The Debtors' obligations under such agreements, plans and programs shall survive confirmation of the Plan, except for (a) executory contracts or employee benefit plans specifically rejected pursuant to the Plan (to the extent such rejection does not violate sections 1113, 1114 and 1129(a)(13) of the Bankruptcy Code) and (b) such executory contracts or employee benefit plans as have previously been rejected, are the subject of a motion to reject as of the Confirmation Date, or have been specifically waived by the beneficiaries of any employee benefit plan or contract.

#### 8.6 *Insurance Policies.*

All insurance policies pursuant to which the Debtors have any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to the Plan and shall be assumed by the respective Debtors and Reorganized Debtors and shall continue in full force and effect. All other insurance policies shall re-vest in the Reorganized Debtors.

#### 8.7 *Advisory Services Agreement.*

That certain Advisory Services Agreement, dated as of March 30, 2007, by and between Holdings and Genstar Capital, LLC, shall be deemed and treated as an executory contract pursuant to the Plan and shall be rejected by the Debtors. No Claims shall arise, survive or result from such rejection.

### SECTION 9. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

#### 9.1 *Conditions Precedent to the Effective Date*.

The occurrence of the Effective Date of the Plan is subject to satisfaction of the following conditions precedent:

(a) <u>Confirmation Order</u>. The Confirmation Order in form and substance reasonably acceptable to the Administrative Agent shall have been entered by the Court and shall have become a

Final Order in full force and effect and there shall not be a stay or injunction (or similar prohibition) in effect with respect thereto.

(b) <u>Execution and Delivery of Other Documents</u>. All other actions and all agreements, instruments or other documents necessary to implement the Plan, including all documents comprising the Plan Supplement, shall have been (i) effected or (ii) duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

(c) <u>Regulatory Approvals</u>. The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents necessary to implement the Plan and that are required by law, regulation, or order.

(d) <u>Consents</u>. All other authorizations, consents and approvals determined by the Debtors to be necessary to implement the Plan shall have been obtained.

(e) <u>Corporate Formalities</u>. The Restated Certificate of Incorporation shall be filed with the Secretary of State of the State of Delaware contemporaneously with the Effective Date.

(f) <u>Other Acts</u>. Any other actions the Debtors determine are necessary to implement the terms of the Plan shall have been taken.

**9.2** *Waiver of Conditions Precedent*.

Each of the conditions precedent in Section 9.1 hereof may be waived, in whole or in part, by the Debtors (with the prior written consent of the Administrative Agent) in writing without notice or order of the Bankruptcy Court.

**9.3** *Effect of Failure of Conditions*.

If the conditions specified in Section 9.1 hereof have not been satisfied or waived in the manner provided in Section 9.2 hereof by the date that is ninety (90) days after the Confirmation Date, then: (a) the Confirmation Order shall be of no further force or effect; (b) no distributions under the Plan shall be made; (c) the Debtors and all holders of Claims and Equity Interests in the Debtors shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; (d) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unaffected by the Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors; and (e) the Plan shall be deemed withdrawn; <u>provided</u>, <u>however</u>, that the Debtors may extend such ninety (90) day period by an additional thirty (30) day period with the prior written consent of the Administrative Agent.

## SECTION 10. EFFECT OF CONFIRMATION

**10.1** *Vesting of Assets*.

On the Effective Date, except as otherwise provided in the Plan (including, without limitation, the continuation of the liens of the Senior Lenders in accordance with, and as evidenced by, the New Security Agreement), pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' estates shall vest in the Reorganized Debtors, or any transferee of the Reorganized Debtors

21

pursuant to restructuring transactions authorized hereby, free and clear of all Claims, liens, encumbrances, charges, and other interests. Except as otherwise provided in the Plan, each of the Debtors, as Reorganized Debtors, shall continue to exist on and after the Effective Date as a separate legal entity with all of the powers available to such legal entity under applicable law, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law. On and after the Effective Date, the Reorganized Debtors shall be authorized to operate their respective businesses, and to use, acquire or dispose of assets, without supervision or approval by the Bankruptcy Court and free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

### 10.2 *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors, and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

### 10.3 *Discharge of the Debtors.*

Except to the extent otherwise expressly provided in the Plan (including, without limitation, the re-evidencing of the Credit Agreement Claims (less the Excess Cash and value of the New Equity distributed to the holders of the Credit Agreement Claims) by the New Credit Agreement), the treatment of all Claims against or Equity Interests in the Debtors under the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims against or Equity Interests in the Debtors of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Commencement Date, or against their estate or properties or interests in property. Except as otherwise expressly provided in the Plan, upon the Effective Date, all Claims against and Equity Interests in the Debtors shall be satisfied, discharged and released in full exchange for the consideration provided under the Plan. Except as otherwise expressly provided in the Plan, all Persons shall be precluded from asserting against the Debtors, the Reorganized Debtors, or their respective properties or interests in property any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

### 10.4 *Exculpation.*

Notwithstanding anything provided herein, as of the Effective Date, none of the Released Parties shall have or incur any liability for any claim, cause of action, or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Reorganization Cases, the formulation, dissemination, confirmation, consummation, or administration of the Plan, or property to be distributed under the Plan, or any other act or omission in connection with the Reorganization Cases, the Plan, or any contract, instrument, indenture, or other agreement or document related thereto or delivered thereunder; *provided, however*, that the foregoing shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent that such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.

### 10.5 *Term of Injunctions or Stays.*

(a)     Except as otherwise expressly provided herein, all Persons who have held, hold or may hold Claims against or Equity Interests in any Debtor are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against any Reorganized Debtor, or its successors, assigns, or

affiliates, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor, or its successors, assigns, or affiliates, with respect to any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor, or its successors, assigns, or affiliates, or against the property or interests in property of any Reorganized Debtor, or its successors, assigns, or affiliates, as applicable with respect to any such Claim or Equity Interest, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Reorganized Debtor, or its successors, assigns, or affiliates, or against the property or interests in property of any Reorganized Debtor, or its successors, assigns, or affiliates, with respect to any such Claim or Equity Interest, and (v) pursuing any Claim released pursuant to Section 10.7 of the Plan.

(b)     Unless otherwise provided, all injunctions or stays arising under or entered during the Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.6     *Injunction Against Interference with Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

### 10.7     *Releases.*

(a)     <u>Releases by Debtors</u>.  Except for the right to enforce the Plan, each Debtor shall, effective upon the occurrence of the Effective Date, be deemed to forever release, waive and discharge each of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever in connection with or related to the Debtors, the Reorganization Cases, or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Reorganization Cases, or the Plan; subject to a limited carve-out solely for criminal acts and intentional fraud.

(b)     <u>Releases by Holders of Claims</u>.  Except for the right to enforce the Plan, each Person who votes to accept the Plan, or who, directly or indirectly, is entitled to receive a distribution under the Plan, including Persons entitled to receive a distribution via an attorney, agent, indenture trustee or securities intermediary, shall, effective upon the occurrence of the Effective Date, be deemed to forever release, waive and discharge each of the Released Parties of and from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever in connection with or related to the Debtors, the Reorganization Cases, or the Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Reorganization Cases, or the Plan.

**10.8    *Preservation of Claims*.**

Except as otherwise provided in the Plan, including Section 10.7, as of the Effective Date, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, any action, cause of action, liability, obligation, right, suit, debt, sum of money, damage, judgment, claim and demand whatsoever, whether known or unknown, in law, equity or otherwise, accruing to the Debtors shall become assets of the Reorganized Debtors, and the Reorganized Debtors shall have the authority to commence and prosecute such causes of action for the benefit of the estates of the Debtors. After the Effective Date, the Reorganized Debtors shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such causes of action without approval of the Bankruptcy Court.

**10.9    *Reservation of Rights*.**

The Plan shall have no force or effect unless and until the Effective Date. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

**10.10    *Plan Supplement*.**

A draft form of the Plan Documents to be entered into as of the Effective Date and any other appropriate documents shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court ten (10) days prior to the Confirmation Hearing. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Documents to be included in the Plan Supplement will be posted at www.kccllc.net/Intalum as they become available.

## SECTION 11.  RETENTION OF JURISDICTION

The Bankruptcy Court shall have exclusive jurisdiction over all matters arising in, arising under, and related to the Reorganization Cases and the Plan for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom.

(b)     To determine any and all motions, adversary proceedings, applications, contested matters, or other litigated matters pending on the Effective Date.

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein.

(d)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated.

(e)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court.

(f)     To hear and determine any timely objections to Administrative Expense Claims or to proofs of claim and Equity Interests, including any objections to the classification of any Claim or Equity Interest, and to allow or disallow any Disputed Claim, in whole or in part.

(g)     To consider any amendments to or modifications of the Plan, or remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(h)     To hear and determine all applications of retained professionals under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date.

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the documents comprising the Plan Supplement, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing.

(j)     To issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation.

(k)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

(l)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code).

(m)     To hear and determine all disputes involving the existence, scope and nature of the discharges granted under Section 10.3 of the Plan.

(n)     To hear and determine all disputes involving or in any manner implicating the exculpation provisions granted under Section 10.4 of the Plan or the releases granted under Section 10.7 of the Plan.

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

(p)     To enter a final decree closing the Reorganization Cases.

(q)     To recover all assets of the Debtors and property of the Debtors' estates, wherever located.

### SECTION 12.  MISCELLANEOUS PROVISIONS

#### 12.1     *Payment of Statutory Fees.*

On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.  Notwithstanding Section 5.1 above, the Debtors shall pay all of the foregoing fees on a per-Debtor basis.

**12.2** *Reserved.*

**12.3** *Dissolution of Statutory Committees and Cessation of Fee and Expense Payment.*

Any statutory committees appointed in the Reorganization Cases shall dissolve on the Effective Date. Provided that all such fees and expenses payable as of the Effective Date have been paid in full, the Reorganized Debtors shall not be responsible for paying any fees and expenses incurred after the Effective Date by the Administrative Agent's Professionals, and the professionals retained by any statutory committees, unless such fees and expenses are payable under the terms of the New Credit Agreement.

**12.4** *Substantial Consummation.*

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**12.5** *Intercompany Claims.*

On or as soon as practicable after the Effective Date, all intercompany claims will either be reinstated to the extent determined to be appropriate by the Debtors or adjusted, waived, continued or capitalized, either directly or indirectly, in whole or in part. Any such transaction may be effected on or subsequent to the Effective Date without any further action by equityholders of any Reorganized Debtor.

**12.6** *Determination of Tax Filings and Taxes.*

(a) For all taxable periods ending on or prior to, or including, the Effective Date, Reorganized United States Aluminum Corporation shall prepare and file (or cause to be prepared and filed) on behalf of the IAC Group, all group tax returns, reports, certificates, forms or similar statements or documents (collectively, "*Group Tax Returns*") required to be filed or that Reorganized United States Aluminum Corporation otherwise deems appropriate, including the filing of amended Group Tax Returns or requests for refunds. If requested by Reorganized United States Aluminum Corporation, Holdings shall promptly execute or cause to be executed and filed any Group Tax Returns of the IAC Group submitted to Reorganized Holdings for execution or filing. Neither IAC nor Holdings shall file or amend any Group Tax Return for any taxable periods (or portions thereof) described in the preceding sentence without Reorganized United States Aluminum Corporation's written consent.

(b) Holdings, Reorganized Holdings, IAC, Reorganized IAC, and Reorganized United States Aluminum Corporation shall cooperate fully with each other regarding the implementation of this Section 12.6 of the Plan (including the execution of appropriate powers of attorney) and shall make available to the other as reasonably requested all information, records and documents relating to taxes governed by this Section 12.6 until the expiration of the applicable statute of limitations or extension thereof or at the conclusion of all audits, appeals or litigation with respect to such taxes. Without limiting the generality of the foregoing, Holdings shall execute prior to the Effective Date a power of attorney authorizing Reorganized Holdings and Reorganized United States Aluminum Corporation to correspond, sign, collect, negotiate, settle and administer tax payments and Group Tax Returns for the taxable periods described in Section 12.6(a).

(c) The Reorganized Debtors shall have the right to request an expedited determination of their tax liability, if any, under section 505(b) of the Bankruptcy Code with respect to

any tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the Effective Date.

(d)      If Holdings or IAC receives written notice from a taxing authority of any pending examination, claim, settlement, proposed adjustment or related matters with respect to taxes that could affect any other member of the IAC Group (by operation of law or by reason of this Plan), it shall so notify Reorganized Holdings in writing within ten (10) business days thereafter. Reorganized Holdings shall have the sole right, at its expense, to control, conduct, compromise and settle any tax contest, audit or administrative or court proceeding relating to any liability for taxes of the IAC Group. With respect to any such proceeding and with respect to the preparation and filing of any Group Tax Returns of the IAC Group, Reorganized Holdings and Reorganized United States Aluminum Corporation may act in its own self-interest and in the interest of its subsidiaries and affiliates, without regard to any adverse consequences to Holdings or IAC.

(e)      If Holdings or IAC is dissolved, merged out of existence, or otherwise treated in a manner that terminates the IAC Group for applicable tax purposes, immediately before such termination, Holdings or IAC (as applicable) shall designate Reorganized United States Aluminum Corporation as the "substitute agent" (within the meaning of Treasury Regulation Section 1.1502-77) for the IAC Group in accordance with Treasury Regulation Section 1.1502-77 and Rev. Proc. 2002-43, 2002-28 I.R.B. 99 (July 15, 2002), in either case, as amended or supplemented, and any comparable provision under state and local law, with respect to all taxable periods ending on or before, or including, the Effective Date

(f)      Reorganized Holdings shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes of the IAC Group, including for any taxable period ending on or prior to, or including, the Effective Date. Within five (5) business days after receipt of any such refunds or credits, Holdings shall notify Reorganized Holdings thereof and shall transfer any refunds to Reorganized Holdings by wire transfer or otherwise in accordance with written instructions provided by Reorganized Holdings.

### 12.7    *Amendments*.

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors (with the prior written consent of the Administrative Agent) at any time prior to or after the Confirmation Date, but prior to the Effective Date. Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification complies with the requirements of this Section 12.7 and does not materially and adversely change the treatment of the Claim of such holder; *provided, however,* that any holders of Claims who were deemed to accept the Plan because such Claims were unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims continue to be unimpaired.

### 12.8    *Effectuating Documents and Further Transactions*.

Each of the officers of the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 12.9    *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors take such action, the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed to be a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in further proceedings involving the Debtors.

### 12.10    *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (with the prior written consent of the Administrative Agent), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms. Nothing in this Section shall be construed to relieve the Debtors from complying with section 1127 of the Bankruptcy Code, to the extent that provision would be applicable, irrespective of this Section.

### 12.11    *Schedules and Exhibits Incorporated.*

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if fully set forth herein.

### 12.12    *Solicitation of the Plan.*

As of and subject to the occurrence of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation, and (b) the Debtors, the Administrative Agent and the Senior Lenders, and each of their respective directors, officers, employees, Affiliates, agents, members, managers, partners, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

### 12.13    *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

**12.14  *Compliance with Tax Requirements*.**

In connection with the Plan and all instruments issued in connection herewith and distributed hereunder, any Person issuing any instruments or making any distribution under the Plan, including any Person described in Sections 5.3 and 5.4 hereof, shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any Person issuing any instruments or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or distributing Person for payment of any such tax obligations.

**12.15  *Notices*.**

All notices, requests, and demands to or upon the Debtors, Senior Lenders or the Administrative Agent to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(a)     if to the Debtors, to:

767 Monterey Pass Road
Monterey Park, California  91754
Attn:  Jeff Park, CFO
Telephone:  (323) 264-1670
Facsimile:  (323) 266-3838

with copies to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attn:  Gary T. Holtzer, Esq.
       Robert S. Lemons, Esq.
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

(b)     if to the Senior Lenders or the Administrative Agent, to:

CIBC World Markets
300 Madison Avenue, 4th Floor
New York, New York  10017
Attn:  Lindsay Gordon
Telephone:  (212) 856-3579
Facsimile:  (212) 856-4135

with a copy to:

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022-4834
Attn: Mark Broude, Esq.
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Dated: January 4, 2010

Respectfully submitted,

International Aluminum Corporation
IAC Holding Co.
United States Aluminum Corporation
United States Aluminum Corporation–Carolina
United States Aluminum Corporation–Illinois
United States Aluminum Corporation–Texas
RACO Interior Products, Inc.
General Window Corporation
International Extrusion Corporation
International Extrusion Corporation–Texas
International Window–Arizona, Inc.
International Window Corporation

By: /s/ Richard E. Almy
       Richard E. Almy
       Chief Executive Officer