## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------x
:
***In re*** : **Chapter 11**
:
**INTERNATIONAL ALUMINUM** : **Case No. 10-_____ (___)**
**CORPORATION, *et al.*,**
: **(Joint Administration Requested)**
**Debtors.** :
-----------------------------------------------------------x

**DEBTORS' MOTION TO (I) PRELIMINARILY APPROVE THE DISCLOSURE
STATEMENT; (II) APPROVE THE FORM OF NOTICE OF COMBINED HEARING
ON THE APPROVAL OF THE DISCLOSURE STATEMENT AND CONFIRMATION
OF THE PLAN AND DISTRIBUTION THEREOF; (III) APPROVE THE
SOLICITATION PACKAGES AND PROCEDURES FOR THE DISTRIBUTION
THEREOF; (IV) APPROVE THE FORM OF BALLOT AND DISTRIBUTION
THEREOF, SETTING THE RECORD DATE, THE VOTING DEADLINE, AND
ESTABLISHING PROCEDURES FOR VOTE TABULATION; (V) ESTABLISH
PROCEDURES FOR FILING OBJECTIONS TO THE DISCLOSURE STATEMENT
AND CONFIRMATION OF THE PLAN; AND (VI) AUTHORIZE RELATED RELIEF**

International Aluminum Corporation, and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (collectively, "**IAC**" or the

"**Debtors**"),[1] hereby submit this motion (the "**Motion**") for entry of an order (the "**Proposed**

**Order**") (i) preliminarily approving the proposed *Disclosure Statement Relating to the Joint*

*Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Disclosure**

**Statement**"),[2] attached hereto as **Annex 1** following the exhibits to the Motion; (ii) approving

the form of notice of combined hearing on the approval of the Disclosure Statement and

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification
number, are: International Aluminum Corporation (3332), IAC Holding Co. (3119), United States Aluminum
Corporation (8449), United States Aluminum Corporation – Carolina (3238),United States Aluminum Corporation –
Illinois (2481), United States Aluminum Corporation – Texas (6269), RACO Interior Products, Inc. (0437), General
Window Corporation (7764), International Extrusion Corporation – Texas (9058), International Extrusion
Corporation (5103), International Window – Arizona, Inc. (2781), and International Window Corporation (5989).

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Disclosure
Statement.

confirmation of the Debtors' proposed *Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "**Plan**"), attached as "Exhibit A" to the Disclosure Statement, and distribution thereof; (iii) approving the solicitation packages and procedures for the distribution thereof; (iv) approving the form of ballot and distribution thereof, setting the record date, the voting deadline, and establishing procedures for vote tabulation; (v) establishing procedures for filing objections to the Disclosure Statement and confirmation of the Plan; and (vi) authorizing related relief. In support of the Motion, the Debtors submit the Declaration of Jeffrey B. Park in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief (the "**Park Declaration**"), filed contemporaneously herewith, and respectfully represent as follows:

## Background

1.      On the date hereof (the "**Commencement Date**"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in this Court (the "**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. A motion seeking joint administration of the Debtors' Chapter 11 Cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") is currently pending before this Court. Information regarding the Debtors' businesses and the background of the Chapter 11 Cases can be found in the Park Declaration.

2.      Prior to the Commencement Date, the Debtors engaged in good faith negotiations with Canadian Imperial Bank of Commerce, New York Agency, as administrative agent (the "**Administrative Agent**") and lender under that certain Credit Agreement, dated as of March 30, 2007 (as amended, supplemented or otherwise modified, the "**Prepetition Credit Agreement**") and the other financial institutions from time to time party thereto, as lenders

(collectively, the "**Prepetition Lenders**"). As a result of these negotiations, the Debtors and certain of the Prepetition Lenders (the "**Required Supporting Holders**"), who hold more than 66 2/3% in principal amount under and one-half in number of claims in respect of the Prepetition Credit Agreement and related documents, entered into a Restructuring Support Agreement (the "**Restructuring Support Agreement**"). The Restructuring Support Agreement and the term sheet attached thereto provide for the Debtors' financial restructuring to be effected through the pre-negotiated Plan, which the Required Supporting Holders have agreed to support and, subject to compliance with the Bankruptcy Code, vote in favor of. In accordance with the Restructuring Support Agreement, the Debtors have filed the Plan and the Disclosure Statement contemporaneously with this Motion.

## Jurisdiction

3.      Pursuant to 28 U.S.C. §§ 157 and 1334, the Court has jurisdiction to consider and grant the relief requested herein. A proceeding to consider and grant such relief is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

4.      Pursuant to sections 105, 502, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3003, 3017, 3018, and 3020, the Debtors request entry of the Proposed Order, substantially in the form of **Exhibit F** attached hereto–

> (i)      preliminarily approving the Disclosure Statement;
>
> (ii)     approving procedures (the "**Solicitation Procedures**") for the Debtors to solicit the acceptance of the Plan, which include –
>
>> (1)     determining which holders of claims or interests may vote to accept or reject the Plan;
>>
>> (2)     temporarily allowing certain claims for voting purposes;

(3)     setting the date an order is entered approving the relief requested herein (the "**Record Date**") as the date and time which determines which holders of claims or interests may vote to accept or reject the Plan or receive Notice of Non-Voting Status (as defined below);

(4)     approving the materials to be sent to holders of claims and interests;

(5)     approving the form of ballot (each a "**Ballot**") substantially in the form attached hereto as **Exhibit D**;

(6)     setting, at 4:00 p.m. (Eastern Time), the day that is 37 days after the Commencement of Solicitation Date (as defined herein) as the deadline (the "**Voting Deadline**") by which Kurtzman Carson Consultants LLC ("**KCC**," or the "**Solicitation Agent**") must receive a Ballot for such Ballot to be counted;

(7)     establishing voting and tabulation procedures; and

(8)     approving a notice to holders of claims and interests not entitled to vote advising of their status (the "**Notice of Non-Voting Status**") substantially in the form of **Exhibit A** (for holders of unimpaired claims) and **Exhibit B** (for holders of fully impaired claims or interests); and

(iii)   approving the following procedures for the final approval of the Disclosure Statement and the confirmation of the Plan, which include –

(1)     scheduling a hearing to obtain final approval of the Disclosure Statement and confirm the Plan during the week of March 1, 2010 or as soon thereafter as the Debtors can be heard (the "**Confirmation Hearing**");

(2)     approving the form and manner of notice of the Disclosure Statement and Confirmation Hearing (the "**Disclosure Statement and Confirmation Hearing Notice**") substantially in the form of **Exhibit C**;

(3)     establishing, at 4:00 p.m. (Eastern Time), on the day that is 9 days after the Commencement of Solicitation Date as the deadline (the "**Discovery Deadline**") to serve discovery relating to the adequacy of the Disclosure Statement and/or the Plan, with any responses to such discovery, including document production, to be served on or before the day that is 21 days after the Commencement of Solicitation Date (the "**Response Deadline**");

(4)      establishing the days that are between 26-33 days after the Commencement of Solicitation Date as the period to conduct depositions relating to the adequacy of the Disclosure Statement and/or the Plan (the "**Deposition Period**"); and

(5)      establishing, at 4:00 p.m. (Eastern Time), the day that is 37 days after the Commencement of Solicitation Date as the deadline (the "**Objection Deadline**") to file and serve objections to the adequacy of the Disclosure Statement and/or the Plan.

### Basis for Relief Requested

**A.    Preliminarily Approving the Disclosure Statement Is Appropriate in Light of these Pre-Arranged Chapter 11 Cases, the Debtors' Business, and the Disclosure Statement Satisfying the Requirements of Section 1125 of the Bankruptcy Code**

5.      The primary purpose of the Plan is to effectuate a restructuring of the Debtors' capital structure in order to bring it into alignment with the Debtors' present and future operating prospects. The cash flow expected to be generated by the Debtors will not be sufficient to satisfy their debt service obligations unless the restructuring pursuant to the Plan is consummated. As set forth in greater detail in the Disclosure Statement, the Debtors have entered into the Restructuring Support Agreement with the Required Supporting Holders and the Administrative Agent. The Required Supporting Holders and Administrative Agent have agreed to support and, subject to compliance with the Bankruptcy Code, vote in favor of the Plan. The Required Supporting Holders hold over 66 2/3% in principal amount and over 50% in number of the Debtors' senior secured claims held by the Prepetition Lenders under the Prepetition Credit Agreement, which are classified under the Plan as Class 2 (Credit Agreement Claims). Class 2 is the only class entitled to the vote to accept or reject the Plan. Therefore, the most critical and complex task required to effectuate a successful reorganization – the negotiation and formulation of a chapter 11 plan of reorganization – has already been accomplished.

6.      The relief requested is also appropriate in light of the nature of the Debtors' business. The Debtors are manufacturers of quality aluminum and vinyl products for

use in commercial and residential applications. The commencement of these Chapter 11 Cases may negatively impact the revenues of manufacturing companies like the Debtors disproportionately more than companies in other industries. It is possible that prolonged Chapter 11 Cases could severely impact the Debtors' overall profitability and relationships with employees, vendors, customers and suppliers. Despite the filing of the Plan and Disclosure Statement on the Commencement Date, every day the Debtors are in chapter 11, business competitors may use the negative stigma associated with bankruptcy to persuade or lure customers away. In addition, the Debtors purchase goods from certain providers who are the only provider of a good used by the Debtors to manufacture their products. The Debtors simply cannot afford to the lose these vendors due to fear of the Debtors' ability to reorganize and satisfy on-going obligations in the ordinary course of business because of prolonged Chapter 11 Cases.

7. In light of these potentially disastrous consequences, the Debtors, the Required Supporting Holders, and the Administrative Agent entered into the Restructuring Support Agreement to restructure the Debtors' finances and emerge from bankruptcy as expeditiously as possible. In furtherance of these goals, preliminarily approving the Disclosure Statement and scheduling a combined Disclosure Statement and Confirmation Hearing as set forth in this Motion allows the Debtors' Chapter 11 Cases to proceed without prejudicing the rights of any party while, at the same time, providing maximum comfort and assurance to the Debtors' customers that they will continue to receive the same high quality products and service from the Debtors. Based on the foregoing, the Debtors submit that the relief requested is necessary and appropriate, is in the best interests of their estates and creditors, and should be granted in all respects.

8.     Finally, the Disclosure Statement satisfies the requirements of section

1125 of the Bankruptcy Code insofar as it contains "adequate information." Section 1125(a)(1)

of the Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records, that
> would enable a hypothetical reasonable investor typical of holders
> of claims or interest of the relevant Class to make an informed
> judgment about the Plan . . .

11 U.S.C. § 1125(a)(l). Thus, a debtor's disclosure statement must, as a whole, provide

information that is reasonably practicable to permit an informed judgment by impaired creditors

entitled to vote on the plan. See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General

Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003). The bottom-line requirement of a disclosure

statement is that it "must clearly and succinctly inform the average unsecured creditor what it is

going to get, when it is going to get it, and what contingencies there are to getting its

distribution." In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

9.     This Court has broad discretion in determining whether a disclosure

statement contains adequate information; the determination must be made on a case-by-case

basis, focusing on the unique facts and circumstances of each case. See, e.g., Mabey v.

Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop.), 150 F.3d 503, 518 (5th Cir.

1998) ("The legislative history of § 1125 indicates that, in determining what constitutes

'adequate information' with respect to a particular disclosure statement, '[b]oth the kind and

form of information are left essentially to the judicial discretion of the court' and that '[t]he

information required will necessarily be governed by the circumstances of the case.'"), cert.

denied, 526 U.S. 1144 (1999); In re PC Liquidation Corp., 383 RR. 856, 865 (E.D.N.Y. 2008)

(standard for chapter 11 disclosure statement is flexible, determined on a case-by-case basis);

Kirk v. Texaco, Inc., 82 RR. 678,682 (S.D.N.Y. 1988) ("The legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a). . . ."). Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. See In re Phoenix Petroleum Co., 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001).

      10.    In exercising their broad discretion, bankruptcy courts generally examine whether the disclosure statement contains, if applicable, the following types of information:

     i.    the circumstances that gave rise to the filing of the bankruptcy petition;

     ii.    an explanation of the available assets and their value;

     iii.    the anticipated future of the debtor;

     iv.    the source of the information provided in the disclosure statement;

     v.    a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

     vi.    the condition and performance of the debtor while in chapter 11;

     vii.    information regarding claims against the estate;

     viii.    a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

     ix.    the accounting and valuation methods used to produce the financial information in the disclosure statement;

     x.    information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

     xi.    a summary of the plan of reorganization or liquidation;

     xii.    any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

     xiii.    information relevant to the risks being taken by the creditors and interest holders;

     xiv.    the actual or projected value that can be obtained from avoidable transfers;

     xv.    the tax consequences of the plan; and

     xvi.    the relationship of the debtor with its affiliates.

See, e.g., In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

These factors are not meant to be comprehensive; nor must a debtor provide information on all factors. Rather, the bankruptcy court must decide what is appropriate in each case. See Ferretti, 128 B.R. at 18-19 (noting that not every debtor needs to provide information on each factor); see also Phoenix Petroleum, 278 B.R. at 393 (making use of a list of factors but cautioning that "no one list of categories will apply in every case").

11.     The Debtors submit that the Disclosure Statement contains adequate information with respect to the applicable factors considered by courts, including, but not limited to, a discussion of:

|  |  |  |
|---|---|---|
| i. | an overview of the Plan, including a chart describing the treatment of each class in the introduction to the Disclosure Statement; |
| ii. | the operation of the Debtors' businesses; |
| iii. | the indebtedness and corporate structure of the Debtors and information regarding claims and administrative expenses; |
| iv. | key events leading to the commencement of the Debtors' Chapter 11 Cases and events occurring in the Debtors' Chapter 11 Cases; |
| v. | proposed capital and debt structures of the reorganized Debtors; |
| vi. | information regarding the future management of the Debtors; |
| vii. | financial projections and a valuation analysis; |
| viii. | a liquidation analysis; |
| ix. | information regarding the new equity to be issued under the Plan; |
| x. | risk factors affecting the Debtors; |
| xi. | the relationship of the Debtors and their affiliates; |
| xii. | requirements for confirmation of the Plan; and |
| xiii. | tax consequences of the Plan. |

12.     In addition to the types of information that courts typically require, the Disclosure Statement provides an overview of the chapter 11 process for those creditors who may be unfamiliar with that process, along with tables summarizing recoveries by class. The Debtors respectfully submit that the Disclosure Statement contains adequate information within the

meaning of section 1125 of the Bankruptcy Code and should be preliminarily approved to expedite the solicitation of votes of holders of Class 2 (Credit Agreement Claims) to accept or reject the Plan. As noted above, the Required Supporting Holders hold in excess of the amount of Credit Agreement Claims and number of votes required under the Bankruptcy Code for Class 2 to accept the Plan.

13.     Relief similar to that requested herein has been approved by bankruptcy courts in pre-packaged chapter 11 cases in this district. See, e.g., In re Panolam Holdings Co., Case No. 09-13889 (MFW) (Bankr. D. Del. Nov. 5, 2009) [Docket No. 43]; In re NTK Holdings, Inc., Case No. 09-13611 (KJC) (Bankr. D. Del. Oct. 23, 2009) [Docket No. 42]; In re Key Plastics L.L.C., Case No. 08-13324 (MFW) (Bankr. D. Del. Dec. 17, 2008) [Docket No. 48]. Bankruptcy Courts outside of this jurisdiction have also granted the relief requested herein in non pre-packaged chapter 11 cases. See, e.g., In re General Growth Properties, Inc., et al., Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. Dec. 1, 2009) [Docket No. 3658]; (order preliminarily approving the disclosure statement, approving the proposed solicitation procedures, and scheduling a combined hearing to consider final approval of the disclosure statement and the confirmation of the joint plan of reorganization); In re Express Energy Services, Operating, L.P., et al., Case No. 09-38044 (Bankr. S.D. Tex. Oct. 29, 2009) [Docket No. 44] (first-day order in pre-arranged chapter 11 cases preliminarily approving the disclosure statement, approving the proposed solicitation procedures, and scheduling a combined hearing to consider final approval of the disclosure statement and the confirmation of the joint plan of reorganization); In re Lenox Sales, Inc. et al., Case No. 08-14679 (ALG) (Bankr. S.D.N.Y. Nov. 3, 2009) [Docket No. 638] (order in pre-arranged chapter 11 cases preliminarily approving the disclosure statement, approving the proposed solicitation procedures, and scheduling a combined hearing to consider

final approval of the disclosure statement and the confirmation of the joint plan of reorganization).[3] The Debtors respectfully submit that the relief requested herein is appropriate in light of the backdrop of these pre-arranged Chapter 11 Cases, the nature of the Debtors' business, and the Disclosure Statement containing adequate information within the meaning of section 1125 of the Bankruptcy Code. Such relief is also necessary to close the transactions specified in the Restructuring Support Agreement, assist the Debtors in obtaining expeditious confirmation of the Plan with the least possible disruption or harm to their businesses, and ensure the Debtors' continued viability.

## B.   Classifications Under the Plan

14.     There are a significant number of unimpaired, unclassified claimants in the Debtors' Chapter 11 Cases, many of whom the Debtors anticipate will have their prepetition claims paid during the pendency of these cases (such as employees and certain taxing authorities).[4] In addition, the holders of claims in Class 1 (Priority Non-Tax Claims), Class 3 (Other Secured Claims), Class 5 (General Unsecured Claims), Class 6 (Intercompany Claims), and Class 7 (Equity Interests in IAC and IAC Subsidiary Debtors) are designated as unimpaired and are not entitled to vote on the Plan. Similarly, Class 4 (Notes Claims) and Class 8 (Equity Interests in Holdings) are fully impaired under the Plan and will not receive any distribution on account of such claims or interests. Under section 1126(g) of the Bankruptcy Code, holders of Class 4 claims and Class 8 interests are deemed to have rejected the Plan and are not entitled to vote on the Plan. Under these circumstances, the Debtors submit that the service of the Plan and

---

[3] Copies of the bankruptcy court orders are attached hereto as **Exhibit E**.

[4] See, e.g., Debtors' Motion for an Order Under 11 U.S.C. §§ 105(a), 363, 507, 1107, and 1108 (A) Authorizing the Debtors to (I) Pay Certain Employee Compensation and Benefits and (II) Maintain and Continue Such Benefits and Other Employee-Related Programs, and (B) Authorizing the Debtors' Banks and Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations (filed contemporaneously with this Motion).

Disclosure Statement upon such claimants would result in the incurrence of unnecessary expenses.

15.     Serving the Plan and Disclosure Statement upon each unimpaired and fully impaired claimant could also cause confusion among the holders of such claims or interests and increase the administrative expenses associated with providing such information. Accordingly, under these circumstances, the Debtors submit that serving the Non-Voting Solicitation Package (as defined below) would allow holders of such unimpaired or fully impaired claims or interests sufficient information to understand their treatment under the Plan while reducing administrative costs to the Debtors' estates.

**C.     Approval of Solicitation Package and Forms of Notice**

16.     Section 1125(c) of the Bankruptcy Code provides, "[t]he same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes." 11 U.S.C. § 1125(c).

17.     A debtor's plan and disclosure statement need not be served on all creditors; rather, a court may authorize the debtor to serve on unimpaired creditors a notice in lieu of the disclosure statement and plan. FED. R. BANKR. P. 3017(d). Pursuant to Bankruptcy Rule 3017(d), a court may authorize a debtor to serve upon unimpaired creditors a notice informing such creditors "that the class is designated in the plan as unimpaired" and that the plan or summary of the plan and disclosure statement may be obtained upon request from the debtor. Id. Notice to unimpaired creditors, however, must provide information regarding the "time fixed for filing objections to" the plan and the date of the hearing on the confirmation of the plan. Id.

18.     The Debtors propose to distribute the following materials to each holder of a Class 2 (Credit Agreement Claim) that is entitled to vote on the Plan (the "**Voting Class**"):

(i)     the order preliminarily approving the Disclosure Statement;

(ii)    the Disclosure Statement and Confirmation Hearing Notice;

(iii)   the Disclosure Statement, which shall include the Plan as an exhibit;

(iv)    a ballot customized for such holder as described below with instructions and a return envelope; and

(v)     such other materials as the Court may direct (collectively, the "**Voting Solicitation Package**").

19.     To each holder of a claim or interest that is not entitled to vote because such holder's claim or interest is either unimpaired or fully impaired, the Debtors shall send:

(i)     the order preliminarily approving the Disclosure Statement;

(ii)    the Disclosure Statement and Confirmation Hearing Notice;

(iii)   a Notice of Non-Voting Status; and

(iv)    such other materials as the Court may direct (collectively, the "**Non-Voting Solicitation Package**").

20.     The Debtors propose to distribute the following materials to (i) the U.S. Trustee, (ii) the attorneys for the Administrative Agent, (iii) the attorneys for any statutorily appointed committee, and (iv) all other parties requesting service in these Chapter 11 Cases:

(i)     the order preliminarily approving the Disclosure Statement;

(ii)    the Disclosure Statement and Confirmation Hearing Notice;

(iii)   the Disclosure Statement, which shall include the Proposed Plan as an exhibit; and

(iv)    such other materials as the Court may direct (collectively, the "**Notice Solicitation Package**" together with the Voting and Non-Voting Solicitation Packages, the "**Solicitation Packages**").

21.     Service of any Solicitation Package, including any applicable notice, shall be, at the Debtors' discretion, by first class mail or overnight delivery, and all documents will be

addressed to the party at the most recent address contained in the Debtors' books and records. The Debtors shall also provide copies of the Disclosure Statement and the Plan, at the Debtors' expense, to any party in interest who specifically requests such documents required under Bankruptcy Rule 3017(a). Because of significantly reduced costs and environmental benefits, the Debtors propose (i) to send the Solicitation Packages in a CD-ROM format instead of printed hard copies (though the Debtors will provide printed hard copies upon request), and (ii) that creditors who hold more than one claim against one or more of the Debtors will receive only one Solicitation Package.

22.     Copies of the Disclosure Statement and the Plan are also on file with the Office of the Clerk of the Bankruptcy Court for review during normal business hours and on the website of the Debtors' claims and noticing agent, www.kccllc.com/Intalum.

D.     **Approving Form of Ballot**

23.     Bankruptcy Rule 3017(d) requires a debtor to mail a form of ballot, substantially in the form of Official Form No. 14, to "creditors and equity security holders entitled to vote on the plan." Bankruptcy Rule 3018(c) provides that, to be valid, a ballot shall be written, signed by the claimholder or interest holder or an authorized agent, and appropriately conformed to Official Form No. 14.

24.     As indicated above, the members of the Voting Class (Class 2) are entitled to vote. All other classes are either unimpaired or impaired and their members are presumed to have either, respectively, accepted or rejected the Plan. Accordingly, the Debtors propose to distribute to the members of the Voting Class a ballot substantially in the form attached hereto in **Exhibit D**. To address the particular aspects of these Chapter 11 Cases, the Debtors have modified the Official Form No. 14 to include certain additional information or procedures that

the Debtors believe to be relevant and appropriate.

## E.    Voting and Balloting Procedures for Claims

### i.    Voting Deadline

25.    Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the court shall fix a time within which the holders of claims or equity security interests may accept or reject a plan. The Debtors shall commence solicitation of the Plan by mailing the Solicitation Packages within seven (7) days of entry of an order granting the relief requested herein (the "**Commencement of Solicitation Date**"). Based on such schedule, the Debtors propose that in order to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and received by KCC no later than 4:00 p.m. (Eastern Time) on the Voting Deadline, which is 37 days after the Commencement of Solicitation Date and 30 days after each holder of a claim or interest will likely receive a Solicitation Package. The Debtors submit that such solicitation period is a sufficient period within which holders of claims and interests can make an informed decision whether to accept or reject the Plan.

### ii.    Procedures to Tabulate Votes

26.    Section 1126(c) of the Bankruptcy Code provides:

A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

27. The Debtors propose the following procedures for tabulating votes:

(i) A vote shall be disregarded if the Court determines, after notice and a hearing, that a vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code;

(ii) All votes to accept or reject the Plan must be cast by using the appropriate Ballot and in accordance with the voting instructions attached to each Ballot and/or as set forth on the Ballot (as may be applicable) and votes cast in any other manner shall not be counted;

(iii) Any Ballot that is returned to KCC, but which is unsigned, or has a non-original signature, shall not be counted;

(iv) A holder of claims shall be deemed to have voted the full amount of its claims in each class and shall not be entitled to split its vote within a particular class;

(v) Ballots that partially reject and partially accept the Plan shall not be counted;

(vi) Any Ballot that is illegible or contains insufficient information to permit the identification of the claimant shall not be counted;

(vii) Ballots that fail to indicate an acceptance or rejection of the Plan, or that indicate both acceptance and rejection of the Plan, shall not be counted;

(viii) Unless previously authorized by the Debtors, only Ballots that are timely received with original signatures will be counted. Unsigned Ballots, or Ballots that are illegible or contain insufficient information to permit the identification of the holder of an interest, shall not be counted;

(ix) Ballots postmarked prior to the Voting Deadline, but received after the Voting Deadline, shall not be counted;

(x) Facsimile Ballots, or Ballots submitted via email or other electronic transmission, shall not be counted, unless holder receives the consent of the Debtors to submit its Ballot by facsimile, e-mail or other electronic transmission; and

(xi) If a holder of eligible claims simultaneously casts inconsistent Ballots, such Ballots shall not be counted.

28.     The Debtors and/or other parties in interest may seek further clarification from the Court on vote tabulation and the solicitation process, and retain the right to object or raise any issue with respect to any Ballot, including issues pertaining to impairment.

29.     The foregoing tabulation procedures are subject to change and may be amended at any time on or before the Confirmation Hearing.  These tabulation procedures, including any amendments thereto, will be submitted for Court approval at the Confirmation Hearing and will be incorporated into the voting instructions to be included with each Ballot.  The Debtors believe that the foregoing proposed procedures provide for a fair and equitable voting process.

### iii.  Waivers of Defects and Irregularities

30.     Unless otherwise directed by the Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots will be determined by the Solicitation Agent and the Debtors in their sole discretion, which determination the Debtors propose be final and binding.  Effective withdrawals of Ballots must be delivered to the Solicitation Agent prior to the Voting Deadline.

31.     The Debtors expressly reserve their respective rights to: (a) contest the validity of any withdrawal of a Ballot, (b) reject any and all Ballots not in proper form, the acceptance of which would, in the opinion of the Debtors or their counsel, be unlawful, and (c) waive any defects or irregularities or conditions of delivery as to any particular Ballot.  The interpretation (including of the Ballot and the respective instructions thereto) by the Debtors, unless otherwise directed by the Court, will be final and binding on all parties.

32.     Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors (or the Court) determine.  Neither the

Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived. Ballots previously furnished (and as to which any irregularities have not theretofore been cured or waived) will be invalidated. The Debtors, in their sole discretion, may request that the Solicitation Agent attempt to contact voters to cure any defects in Ballots.

### iv. Withdrawal of Ballots and Revocation

33. Any party who has delivered a valid Ballot to the Solicitation Agent for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Solicitation Agent at any time prior to the Voting Deadline. A notice of withdrawal, to be valid, must: (i) contain the description of the Ballot(s) to which it relates and the aggregate amount represented by such claim(s); (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn; (iii) contain a certification that the withdrawing party owns the claim(s) and possesses the right to withdraw the vote sought to be withdrawn; and (iv) be received by the Solicitation Agent in a timely manner at the address set forth above.

34. A purported notice of withdrawal of Ballots which is not received in a timely manner by the Solicitation Agent shall not be effective to withdraw a previously cast Ballot. Any party who has previously submitted to the Solicitation Agent prior to the Voting Deadline a properly completed Ballot may revoke such Ballot and change its vote by submitting to the Solicitation Agent prior to the Voting Deadline a subsequent properly completed Ballot for acceptance or rejection of the Plan. In the case where more than one timely, properly completed

Ballot is received on account of a claim, only the Ballot which bears the latest date shall be counted.

**F.      Approval of the Objection Deadline and the Discovery Schedule**

35.      Bankruptcy Rules 2002(b) and (d) require not less than 25 days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan of reorganization. Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to a plan of reorganization, and Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the adequacy of a disclosure statement. The Debtors respectfully request that the Court set the Objection Deadline as to the adequacy of the Disclosure Statement and the confirmation of the Plan at 4:00 p.m. (Eastern Time) on the day that is 37 days after the Commencement of Solicitation Date.

36.      The Debtors further request that the Court direct that any objection: (i) be in writing; (ii) state the name and address of the objecting party and the nature of the claim or interest of such party; (iii) state with particularity the basis and nature of any objection; and (iv) be filed, together with proof of service, with the Court and served so that they are actually filed and received on or before the Objection Deadline by: (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Robert J. Lemons, and Christopher M. Lopez), counsel to the Debtors, and Richards, Layton & Finger, P.A., One Rodney Square, Wilmington, Delaware 19899 (Attn: John Knight and Katherine L. Good), co-counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Jane Leamy); (iii) Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Attn: Mark Broude and Jason Sanjana), counsel to the Administrative Agent; and (iv) counsel to any statutory committee appointed in these Chapter 11 Cases.

37.     Finally, the Debtors request that the Court approve the proposed Discovery Deadline, Response Deadline, and Deposition Period (collectively, the "**Discovery Schedule**"). Court approval of the Discovery Schedule will ensure a fair and orderly process for parties-in-interest to serve written discovery and conduct depositions relating to the adequacy of the Disclosure Statement and/or the Plan. The Debtors submit that the Discovery Schedule does not prejudice the rights of any party and is in the best interest of all creditors and the Debtors' estates.

**G.      Approval of the Record Date for Claims and Interests**

38.     Bankruptcy Rule 3017(d) provides, in relevant part, that, for purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." FED. R. BANKR. P. 3017(d).

39.     The Debtors request that the date an order granting the relief requested herein is also set as the Record Date in these Chapter 11 Cases for determining: (i) the holders of claims and equity interests entitled to receive a Non-Voting Solicitation Package, and (ii) the holders of claims eligible to vote pursuant to the solicitation procedures described herein. The Record Date is appropriate as such date facilitates the determination of which creditors are entitled to vote on the Plan or, in the case of non-voting classes of creditors and interest holders, to receive a Notice of Non-Voting Status.

**H.      Miscellaneous**

40.     Prior to any mailing, the Debtors request authority to make final, non-substantive edits (such as correcting typographical and grammatical errors, making stylistic and

formatting improvements, adding updates of information as may be helpful, and adding revisions announced on the record at the hearing on the Disclosure Statement) to the Disclosure Statement, the Plan, all notices to be served, and all versions of Ballots, with such revisions to be filed with the Court which shall be deemed approved by the order granting this Motion without further notice or hearing.

### Notice

41.     No trustee or examiner has been appointed in the Chapter 11 Cases. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware, (ii) the Debtors' 30 largest unsecured creditors (on a consolidated basis), (iii) Latham & Watkins LLP, as counsel to the Administrative Agent, and (iv) White & Case LLP, as counsel to the ad hoc committee of noteholders under the Debtors' unsecured subordinated loan agreement, dated as of March 30, 2007. As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Del. Bankr. L.R. 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is required.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: January 5, 2010
      Wilmington, Delaware

Respectfully submitted,

*Katherine Good*

Mark D. Collins (No. 2931)
John H. Knight (No. 3848)
L. Katherine Good (No. 5101)
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Direct Dial: (302) 651-7700
Direct Fax: (302) 654-7701
Email: collins@rlf.com
      knight@rlf.com
      good@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Gary T. Holtzer
Robert J. Lemons

PROPOSED ATTORNEYS FOR THE
DEBTORS AND DEBTORS IN POSSESSION